# NICOLLET PROPERTIES, INC., AND OTHERS v. ST. PAUL MERCURY INSURANCE COMPANY AND OTHERS.

135 N. W. (2d) 127.

April 23, 1965—No. 39,377.

*Nathan A. Cobb* and *Richards, Montgomery, Cobb & Bassford,* for plaintiff appellants.

*Benjamin M. Kail,* for defendant appellant.

*Altman, Geraghty & Mulally, Ralph E. Koenig,* and *James M. Corum,* for respondents.

MURPHY, JUSTICE.

The plaintiffs and defendant James Oxborough appeal from the judgment and from orders denying their motions for amended findings or a new trial.

This litigation has its origin in an action for damages by Lowell Zube and members of his family who were occupants in an automobile which collided with an automobile driven by Herbert A. Long. Other defendants in the action brought by the Zubes included Nicollet Properties, Inc. (hereinafter referred to as Nicollet), Kraus-Anderson, Inc. (hereinafter referred to as Kraus-Anderson), and Oxborough, an employee of Nicollet. The particular appeals we consider grow out of an action for declaratory judgment brought by Nicollet, Kraus-Anderson, and Employers Mutual Liability Insurance Company of Wisconsin (hereinafter referred to as Employers), which had issued a public liability policy to Nicollet. The declaratory judgment action sought a determination to the effect that under the terms of an automobile liability policy issued to Zube by St. Paul Mercury Insurance Company and St. Paul Fire & Marine Insurance Company (hereinafter referred to as the St. Paul companies), Nicollet, Kraus-Anderson, and Oxborough were insured so as to obligate the St. Paul companies to pay whatever sums those parties might be obligated to pay by reason of injuries sustained by the Zubes, and that the recovery against Employers is limited to the excess of the limit provided for in the St. Paul companies' policy. Oxborough, named as a defendant in the declaratory judgment action, also claimed that the policy issued to Zube protected him. The St. Paul companies deny that the provisions of their policy included protection for the plaintiffs and Oxborough or that there was any duty on their part to assume the defense of the action instituted by the Zubes.

Numerous errors are assigned by appellants, but it is only necessary for us to review one relating to the correctness of the trial court's determination that plaintiffs and Oxborough were not protected as insureds under the terms of the policy issued by the St. Paul companies to Lowell Zube.

From an examination of the record it appears that Nicollet owns and operates a drive-in theater located on the north side of Highway No. 13 in Dakota County and that Kraus-Anderson was also joined in the Zube action as an owner, although it has no interest in the theater. At the point where patrons enter the theater area from Highway No. 13 there are two avenues, an entrance and an exit, with an island between them. On August 26, 1962, Oxborough, a minor, was employed by Nicollet to stand at the entrance of the driveway to the theater area and indicate the entrance to prospective customers by use of a flashlight. At about 8 p. m., daylight savings time, while driving east on Highway No. 13, Zube approached this entrance. When he was about two blocks away, he saw the boy standing on the island. He intended to make a left turn into the theater area. When he was at a point about 50 or 100 feet from the driveway, he gave a signal for a left-hand turn for the benefit of following vehicles. He saw the youth waving his flashlight, indicating the entrance to the theater area. He followed the directions given, but before he commenced his turn, he looked to the east to observe the traffic. In making his left-hand turn and while his car was on the westbound lane of Highway No. 13 and entering the driveway, his car was struck at the right front door by the Long vehicle, which approached from the opposite direction.

As a result of the action brought by the Zubes to recover damages because of this accident, the original defendants, Nicollet, Kraus-Anderson, and Oxborough, now claim that they are protected by the policy issued to Zube by the St. Paul companies and that those companies should defend and indemnify them for any judgment entered against them. The provision of the policy with which we are concerned recites:

"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the

named insured * * * and also includes any person while using the automobile and any person or organization legally responsible for the use thereof."

The policy further provided:

"With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:

"(a) Defend any suit against the insured alleging such injury, sickness, disease or destruction, and seeking damages on account thereof, even if such suit is groundless, false or fraudulent."

By the insuring agreement of such policy, the St. Paul companies agreed:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease * * *, hereinafter called 'bodily injury,' sustained by any person."

The findings of the trial court in the declaratory judgment action recite:

"That on August 26, 1962, plaintiff Nicollet Properties, Inc. had in its employment the defendant James Oxborough who was at said time employed to show to and give directions to drivers on said Highway 13 who were desirous of entering said drive-in theatre property; that said defendant James Oxborough was at said time engaged in said employment and was acting within the scope of his employment."

The court concluded:

"That the coverage of the policy of insurance issued by St. Paul Mercury Insurance Company and St. Paul Fire and Marine Insurance Company to Lowell Zube does not extend to Nicollet Properties Inc. or Kraus-Anderson, Inc. as insureds with respect to any claims made by the Zubes in the action hereinbefore referred to * * *.

"That no obligation exists on the part of St. Paul Mercury Insurance Company or St. Paul Fire and Marine Insurance Company to pay any damages on behalf of the Nicollet Properties, Inc., Kraus-

Anderson, Inc., or defendant James Oxborough because of any bodily injuries and property damages sustained by the Zubes in the said accident of August 26, 1962.

"That there is no duty on the part of St. Paul Mercury Insurance Company or the St. Paul Fire and Marine Insurance Company to assume the defense and its costs and expenses on behalf of any of the plaintiffs herein or James Oxborough in the litigation arising out of the action commenced by the Zubes * * *.

"That the insurance coverage of the plaintiff Employers Mutual Liability Insurance Company of Wisconsin extends primary coverage for the claims made in the actions commenced by the Zubes as aforesaid."

We direct our attention to the assertion of the plaintiffs in this declaratory judgment action that the operator of the drive-in theater, through its employee, James Oxborough, was "legally responsible for the use" of the Zube automobile so as to entitle them to the contractual benefits of the policy issued by the St. Paul companies on the Zube automobile. In other words, it is their claim that Oxborough was "using" the Zube automobile within the meaning of the omnibus clause when he indicated the entrance driveway with his flashlight. We have examined the numerous authorities cited and discussed by the parties. Three of them have application to the principles of law involved in this appeal. They are: Woodrich Const. Co. v. Indemnity Ins. Co. 252 Minn. 86, 89 N. W. (2d) 412; Liberty Mutual Ins. Co. v. Steenberg Const. Co. (8 Cir.) 225 F. (2d) 294; and J. Scheer & Sons Co. v. Travelers Ind. Co. 35 Misc. (2d) 262, 229 N. Y. S. (2d) 248.

In Liberty Mutual Ins. Co. v. Steenberg Const. Co. (8 Cir.) 225 F. (2d) 294, 295, the court considered the following provision:

"* * * The unqualified word 'insured' includes the named insured [here the subcontractor] and * * * also * * * any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured * * *."

The court there held that under that provision of the policy an employee of a contractor who was supervising and signaling the movement from the rear of the subcontractor's truck was "using" the truck within the meaning of the clause. In that case the contractor's employee was actively directing the backward movement of the truck. Both the contractor and the subcontractor were engaged in work incidental to the same construction work and the conduct of both proximately contributed to cause the accident. The right of the general contractor's employee to give the directions and the duty of the subcontractor's driver to conform to them were conceded.

Our decision in the Woodrich case deals with another situation where the cooperation of employers jointly engaged in a common project presented circumstances in which the arm and hand signal of one of the employees constituted a "use." In that case, which involved a road-paving operation, cement trucks had to maneuver in a restricted and congested area so as to back up to a paver or cement-mixing machine. Under the circumstances in that case the paver was completely obscured from the truck driver's vision. An employee of the Woodrich company undertook to direct the driver and transmit instructions to him by means of arm and hand signals as he backed towards the paver. Under these circumstances, the court found, under the provisions of the omnibus clause, that Woodrich was an insured "using" the truck when it backed over the plaintiff, causing the injuries involved in the litigation. In that case we said (252 Minn. 94, 89 N. W. [2d] 418):

"* * * Where, as an incident of and in the furtherance of his construction work, a general contractor assumes *active control or guidance* of a backward movement of a truck provided by a subcontractor, and his negligence in the exercise of that control and guidance is a proximate cause of the accident, the general contractor thereby participates in the operation of the truck to such an extent as to be a *user* of the vehicle. When the general contractor becomes legally obligated to pay damages proximately caused by such a negligent use of the vehicle, he falls within the meaning of insurance contract provisions * * * which provide coverage for the insured for all sums which he 'shall become legally obligated to pay as damages' for injuries to any person

'caused by accident and arising out of the ownership, maintenance or use' of an automobile." (Italics supplied in part.)

The case of J. Scheer & Sons Co. v. Travelers Ind. Co. *supra,* dealt with the issue of whether directing a truck's backward movements constituted a "use" for insurance purposes. In that case, a truck delivered a load of cement to a garage being repaired by a general contractor. As the truck was backing in, a man from the cement company was standing on the side of the truck to guide its movements. As it backed in, the foreman for the general contractor undertook to see that the top of the truck cleared some overhead sprinkler heads. As the truck neared a water pipe hanging from the ceiling, the man on the side of the truck, by signals, stopped it. At that time he heard the floor creak, but the foreman said it was safe. The floor began to vibrate, however, and while the driver was attempting to drive the car out, the floor collapsed, the vehicle fell, and the building was damaged. The court said (35 Misc. [2d] 265, 229 N. Y. S. [2d] 251):

"Nor can the court uphold the plaintiffs' contention that Kagan's [contractor's employee] standing by and telling the chauffeur as he was backing in that he was clearing the sprinkler heads safely, placed Scheer [the contractor] in control of the truck. *This commonplace act of accommodation did not take the control of the truck out of the hands of the chauffeur and Romano, or make Scheer a participant in such control. Neither Scheer nor Kagan used the truck in any way.* They, therefore, are not included among the insured in the policy." (Italics supplied.)

In discussing the application of the term "use" as it was found in an omnibus provision of an insurance policy, we said in Hammer v. Malkerson Motors, Inc. 269 Minn. 563, 571, 132 N. W. (2d) 174, 179:

"A word such as 'use' cannot be interpreted in a vacuum. Its meaning cannot be ascertained without reference to the context in which it is employed. It may have a general meaning encompassing any use of an object, or it may have a restricted meaning. Thus, as to the named insured, the policy undoubtedly covers any use of the owned

automobile. As to another insured, it covers use only if driven with the permission of the named insured."[1]

We agree with the trial court that the employee Oxborough was not "using" the Zube automobile within the meaning of the policy before or when it came into collision with the Long vehicle. The circumstances of this case distinguish it from those found in the Steenberg and Woodrich cases. Here, Zube was in complete control of his automobile and did not need or require directions such as those given in the fact situations referred to. He could clearly see where he was going. Oxborough was "using" a flashlight to indicate the entrance which prospective patrons were to use. There is no suggestion in the record that he had any other function. The manager of the theater testified:

"Q. What were your instructions as to what he should do on that island?

"A. He is there on the island indicating to the people that this is the driveway where you come into the theater. As the traffic comes along and they indicate with the signal light that they wish to turn into the theater, he then indicates with this light, this is the driveway that you enter on.

\* \* \* \* \*

"[Q.] Do you so indicate where the young man goes?

"A. Yes. There is an entrance and an exit driveway, so he is standing in the entrance driveway so they then know that this is the driveway that they come in on.

\* \* \* \* \*

"[Q.] His sole duty then is to indicate the entrance driveway as distinguished from the exit driveway?

"A. Yes.

"[Q.] He has no other duty beyond that?

"A. No."

---

[1]For numerous definitions of the word "use" as employed in automobile liability insurance policies, see 43 Wd. & Phr. (Perm. ed.) Supp. pp. 178, 179.

The testimony of Zube is that he saw Oxborough for the first time when he was about two blocks east of the entrance. When Zube was 50 to 100 feet east of the entrance driveway, he turned his left signal on. He had an unimpaired view of oncoming traffic conditions for a distance of at least three-fourths of a mile as he approached the entrance in daylight. He testified that all that Oxborough did was to stand next to the island at the middle of the entrance to the theater and wave his light back and forth. He was not on the highway at any time directing or stopping traffic. A significant distinction between the situations in the Woodrich and Steenberg cases lies in the fact that in those cases the movement of the vehicles was backward and the drivers had no vision of the direction in which they were moving. Because of the design of the trucks, it would not have been possible without auxiliary aid to manipulate their vehicles and maintain the necessary lookout consistent with prudent driving. The signalmen placed themselves in a position where they could see the route of backward travel and controlled the movements of the trucks by their directions. Except for performing the mechanical operations, such as braking, turning, or shifting gears, the signalmen there were actually controlling the movement and directions of the trucks. In the instant case, it may be fairly said that Oxborough functioned no differently than an electric sign indicating an entrance to a parking area. This function is too remote to be considered a use within the meaning of the policy. It would not be reasonable to say that the omnibus clause comprehends that one who indicates an entrance or exit from a parking area is using the automobile of the person to whom this information is conveyed.

The other assignments of error are all predicated on the assumption that the plaintiffs are protected by the omnibus clause contained in the Zube policy. Since we hold to the contrary, there is no necessity to discuss them.

Affirmed.