**ED KRAEMER & SONS, INC., Appellant,**

v.

**TRANSIT CASUALTY COMPANY, L & H Transport, Inc., Mutual Service Casualty Insurance Company, et al., Brian McCabe, Respondents.**

No. CO–86–1470.

Court of Appeals of Minnesota.

March 17, 1987.

Review Denied May 18, 1987.

Martin N. Burke, Kirk O. Kolbo, Faegre & Benson, Minneapolis, for Ed Kraemer & Sons, Inc.

Robert D. Brownson, Lasley, Gaughan, Stich & Angell, Minneapolis, for Transit Cas. Co.

James R. Gray, Gilmore, de Lambert, Aafedt & Forde, Minneapolis, for L & H Transport, Inc.

David M. Bolt, Jeanne H. Unger, Rider, Bennett, Egan & Arundel, Minneapolis, for Mutual Service Cas. Ins. Co.

J. Richard Baldwin, Webster & Baldwin, St. Paul, for Brian McCabe.

Heard, considered and decided by RANDALL, P.J., and FOLEY and WOZNIAK, JJ.

**OPINION**

FOLEY, Judge.

This declaratory judgment action was commenced by appellant Ed Kraemer & Sons, Inc. against respondents Transit Casualty Company and Mutual Service Casualty Insurance Company to establish insurance coverage and the duty to defend.

Kraemer appeals from that portion of the judgment determining priority of coverage and does not contest the trial court's conclusion that Transit and Mutual Service owe it no duty to defend. Transit filed a notice of review seeking reversal of the trial court's determination that the Transit policy provided coverage to Kraemer in the underlying personal injury action. We affirm in part, reverse in part and remand.

**FACTS**

A. *The Underlying Action*

The personal injury action against Kraemer arises out of a 1982 accident at a construction site where Kraemer was the general contractor. Kraemer contracted for supply of concrete bridge beams. Delivery of the beams was contracted to L & H Transport, Inc., which in turn leased the two vehicles involved in the accident, a steerable trailer insured by Transit and a semi-tractor insured by Mutual Service. The beams were transported to the construction site by placing one end of the beam on the semi-tractor, which was the lead vehicle, and the other end on the trailer. Brian McCabe, plaintiff in the underlying action, was the driver of the steerable trailer and Dennis Huneke was the driver and owner of the semi-tractor.

The vehicles entered the construction site along a paved road with a downhill incline. After Huneke made a right-hand turn onto a dirt work road and continued toward two cranes for unloading, the trailer driven by McCabe began an uncontrolled roll down hill. Kraemer employees were guiding the vehicles with hand signals at the time. In an attempt to slow the trailer, Kraemer employees threw pieces of lumber under its wheels. Chains securing the beam apparently broke and the beam fell off the trailer, which then came to a stop.

McCabe sued Kraemer for injuries allegedly sustained as a result of the accident. Depositions taken in the underlying action indicate four possible causes of action against Kraemer: (1) negligent supervision while directing the operation of the tractor and trailer; (2) negligent choice of the route by which the vehicles entered the construction site; (3) negligent preparation of the roadway surface; and (4) negligence in throwing pieces of lumber under the trailer as it lost control.

B. *The Insurance Policies*

The Mutual Service policy covering the semi-tractor owned by Huneke provides $300,000 in bodily injury liability insurance. Huneke is the named insured. The policy further provides coverage to an "insured," defined as follows:

Anyone else is an insured while using with your permission a covered auto you own, or borrow except:

(a) The owner of a covered private passenger type auto you hire or borrow from one of your employees or a member of his or her household.

(b) Someone using a covered auto while he or she is working in a business of selling, servicing, repairing, or parking autos unless that business is yours.

(c) Anyone other than your employees, a lessee or borrower or any of their employees, while moving property to or from a covered auto.

The Transit policy covering the trailer driven by McCabe provides $500,000 of bodily injury liability insurance. In relevant part, the Transit policy defines an "insured" as:

[A]ny other person while using an owned automobile or a temporary substitute automobile with the permission of the named insured, provided his actual opera-

tion or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

(1) a lessee or borrower of the automobile, or

(2) an employee of the named insured or of such lessee or borrower * * *.

Kraemer is insured under a comprehensive general liability policy issued by Great American Insurance Company, which provides general liability protection against risks of construction accidents and covers Kraemer in the underlying action. For a premium payment of $79,134, Kraemer had additionally purchased liability coverage for the operation of "any auto."

### C. *The Trial Court's Rulings*

### 1. *Original Order*

Both the Transit and Mutual Service policies contain standard omnibus clauses which extend coverage to persons *using* a covered vehicle with the named insured's permission. Based on these omnibus clauses, Kraemer moved for summary judgment and a declaration of rights. In an order issued February 9, 1986, the trial court granted Kraemer's motion for a declaration that it was entitled to coverage under the Transit and Mutual Service policies but denied that portion of the motion seeking a declaration that Kraemer was entitled to defense of the underlying action from Transit and Mutual Service. The court further concluded that issues of material fact precluded a declaration of priority among the Transit, Mutual Service and Great American policies.

### 2. *Amended Order and Judgment*

In an amended order and judgment, the trial court denied Transit and Mutual Service's motion to reconsider its determination that Kraemer was covered under the policies. The trial court further found that the Great American policy provided primary coverage, that the Transit policy provided secondary coverage, and that the Mutual Service policy provided coverage after the other two policies were exhausted. These appeals followed.

### ISSUES

1. Did the trial court err in determining as a matter of law that Kraemer was an omnibus insured under the Transit and Mutual Service policies?

2. Did the trial court err in determining as a matter of law that coverage under Kraemer's comprehensive general liability policy was primary to the Transit and Mutual Service policies in the underlying personal injury action?

### ANALYSIS [1]

1. The trial court based its determination that Kraemer was an omnibus insured on *Woodrich Construction Co. v. Indemnity Insurance Co.*, 252 Minn. 86, 89 N.W.2d 412 (1958). *Woodrich* similarly involved a declaratory judgment action arising after a construction accident. Crawford, a state inspector, was injured when struck by a vehicle leased by Baker, a subcontractor. The accident occurred while Zaske, the owner of the leased vehicle, was backing up at the job site. Zaske was receiving directions from an employee of Woodrich, the general contractor. Crawford sued, and judgment was entered solely against Woodrich. Woodrich then initiated an action seeking coverage under the omnibus clauses of the Baker and Zaske policies as a "user" of the vehicle involved in the accident.

On appeal, the supreme court held that "use" of a vehicle was not limited to *physi-*

---

**1.** We note that only Transit filed a notice of review seeking reversal of the trial court's determination that Kraemer is an omnibus insured under its own policy. Although Mutual Service fully discusses the propriety of this determination with regard to its own policy, this is simply an attempt to bootstrap its arguments to Transit's without meeting the requirements of Minn. R.Civ.App.P. 106. Had the facts in this case compelled a different result, only Transit would have been entitled to the affirmative relief requested.

*cal* use but also encompassed *control and direction* exercised over the vehicle once it entered the construction site. *Id.* at 93, 89 N.W.2d at 418.

The supreme court further held that Woodrich was legally responsible for *use* of the Zaske vehicle within the meaning of the policies.

> Where, as an incident of and in the furtherance of his construction work, a general contractor assumes active control or guidance of a backward movement of a truck provided by a subcontractor, and his negligence in the exercise of that control and guidance is a proximate cause of the accident, the general contractor thereby participates in the operation of the truck to such an extent as to be a *user* of the vehicle.

*Id.* at 94, 89 N.W.2d at 418 (footnote omitted) (emphasis in original).

Although the proximate cause of the accident here has not been determined, it does not affect the scope of coverage afforded to Kraemer under the Transit and Mutual Service policies.

3. Although the negligence of the general contractor must be a proximate cause of the accident in order to establish his liability in tort for the payment of damages, it does not necessarily follow, *once his liability in damages has been established,* that proximate cause is an essential element to establish coverage under an insurance policy provision which provides that the insurer shall pay, on behalf of the insured, all sums which the latter shall become legally obligated to pay as damages for injuries to any person *caused by accident and arising out of the ownership, maintenance, and use of an automobile.* The contractual words "caused by accident and arising out of" are broad and comprehensive in their meaning. The determination of the scope of coverage and the nature of the peril insured against is dependent upon a proper interpretation of the contract to discover the intent of the contracting parties, and that interpretation

is not controlled by tort concepts of liability.

*Woodrich,* 252 Minn. at 94, n. 3, 89 N.W.2d at 418, n. 3 (emphasis in original) (citations omitted).

The concept of extending insurance coverage to vicarious users was first applied in *Liberty Mutual Insurance Co. v. Steenberg Construction Co.,* 225 F.2d 294 (8th Cir.1955). In *Liberty Mutual,* judgment was entered in a negligence action against Steenberg, a general contractor, and the subcontractor as joint tortfeasors. Steenberg then commenced an action for indemnity against the subcontractor's insurer based on an omnibus clause in the subcontractor's insurance policy which stated that coverage was extended to "any person while using the automobile and any person * * * legally responsible for the use thereof." *Id.* at 296. The Eighth Circuit upheld the trial court's grant of recovery against the subcontractor's insurer and its determination that under the terms of the policy and Minnesota law,

> the *active directing by the general contractor of the backward movement of the truck and the admitted following by the subcontractor's driver of the signals so given him*—particularly since both of these things had been done as incidents of the construction work and both had proximately contributed to occasion the accident—made the participation of the general contractor such an immediate part of the actual operating of the truck as to constitute the general contractor, in a sufficient legal sense, a person "using the automobile", or in any event a person "legally responsible for the use thereof", within the language and coverage of the omnibus clause of the policy.

*Id.* (emphasis supplied).

This concept was recently reaffirmed by the supreme court when *Woodrich* was cited in *Farm Bureau Mutual Insurance Co. v. Milbank Mutual Insurance Co.,* 284 N.W.2d 180 (Minn.1979). Although neither party in *Farm Bureau* was a general contractor and the accident did not arise from

negligence occurring at a construction site, the supreme court stated:

> No reason has been advanced for the proposition that the * * * principle [advanced in Woodrich] should not apply one step removed under the omnibus clause where liability for a vicarious user is imposed in turn on another party. We hold that the principle does apply and that [one of the joint adventurers] was an additional insured. Farm Bureau could not recover against him * * *.

Id. at 184 (footnote omitted) (emphasis supplied).

Transit nonetheless contends that while Woodrich involved an omnibus clause extending coverage for "use" derived from operation or loading/unloading of the vehicle, its own policy limits coverage for "use" in loading/unloading to lessees or borrowers of the insured vehicle. The trial court properly rejected this argument and found that the unloading restrictions in the Transit policy did not apply since "[m]ere proximity to the point of unloading is not enough to change the nature of the operation from one of transporting to one of unloading." It is undisputed that the beams were to be lifted from the vehicles once properly positioned under the cranes and that the drivers were proceeding toward this destination when the accident occurred.[2] Moreover, Woodrich notes that "an assumption of control and supervision of a backing movement of a truck, separate and independent of any unloading thereof, may constitute a use within the omnibus provisions of such policies." Woodrich, 252 Minn. at 95, 89 N.W.2d at 419 (citing Liberty Mutual, 225 F.2d 294) (emphasis supplied).

Transit further relies on Nicollet Properties, Inc. v. St. Paul Mercury Insurance Co., 271 Minn. 65, 135 N.W.2d 127 (1965), to support its position that Woodrich is to be limited to its facts. In Nicollet, the supreme court concluded that an attendant at a drive-in theatre was not a "user" of the vehicle since the driver "was in complete control of his automobile and did not need or require directions." Id. at 72, 135 N.W.2d at 132. Distinguishing Woodrich and Liberty Mutual, the supreme court stated:

> Except for performing the mechanical operations, such as braking, turning, or shifting gears, the signalmen [in Woodrich and Liberty Mutual] were actually controlling the movement and directions of the trucks. In the instant case, it may be fairly said that [the attendant] functioned no differently than an electric sign indicating an entrance to a parking area. This function is too remote to be considered a use within the meaning of the policy.

Nicollet, 271 Minn. at 73, 135 N.W.2d at 132 (emphasis supplied).

Mutual Service argues that under Nicollet, exclusive control of the vehicle is critical in determining whether coverage arises, a factor absent in this case since Huneke's pretrial testimony indicates that

2. We note that the Minnesota Supreme Court has not expressly adopted the "complete operation" doctrine urged by Transit when examining a particular activity to determine whether it was incident to the loading/unloading process or a separate operation. See State Automobile & Casualty Underwriters v. Casualty Underwriters, Inc., 266 Minn. 536, 124 N.W.2d 185 (1963). At best, the supreme court has merely indicated a preference for the "complete operation" doctrine. See Eden Prairie Independent School District No. 272 v. Auto-Owners Insurance Co., 279 N.W.2d 358, 359–60 (Minn.1979) (in light of statute and administrative regulations requiring action on the part of school bus drivers, unloading of school bus commences when driver turns on amber prewarning lights). In absence of express adoption of a particular doctrine, we adhere to the traditional notion that each case is to be decided on its own facts. See State Automobile, 266 Minn. at 543–44, 124 N.W.2d at 190. The suggestion here that "unloading" began when the vehicles entered the construction site is unsupported by the facts.

For similar reasons, the exclusion in the Mutual Service policy for "[a]nyone other than [the named insured's] employees, a lessee or borrower or any of their employees, while moving property to or from a covered auto" does not apply. (Emphasis supplied.) Nowhere is it alleged that the beam (the "property") was being "moved from" the vehicles at the time of the accident.

he was *not* solely dependent on directions provided by Kraemer employees.

These arguments must also be rejected. *Nicollet* did not involve vicarious liability based on supervisory control. Moreover, *Farm Bureau,* decided after *Nicollet,* reestablished that "exclusive" control is not a prerequisite to *Woodrich* vicarious liability: "[In *Woodrich* ] [w]e held that the company's *exercise of control* over the truck was sufficient to confer coverage as a user where the negligence of an employee had been imputed to it." *Farm Bureau,* 284 N.W.2d at 184 (emphasis supplied).

Both the Transit and Mutual Service policies provide coverage for accidents arising out of the "ownership, maintenance or *use* of a covered" vehicle and extend coverage to anyone using a covered vehicle with the named insured's permission. These policies are indistinguishable from omnibus clauses in *Woodrich* and *Liberty Mutual.* The trial court thus properly determined that Kraemer is an omnibus insured under these policies.

Finally, while the proximate cause of McCabe's accident is yet to be determined, there can be no dispute that his injuries arose out of the "use" of the two vehicles. Minnesota courts have held that the language "arising out of the ownership, maintenance, or use of an automobile" means that there must be some causal connection between the use of the automobile and the injury. *See, e.g., Waseca Mutual Insurance Co. v. Noska,* 331 N.W.2d 917, 920 (Minn.1983) (fires resulting when sparks flew from uncovered barrels of hot ashes transported by truck would not have occurred "but for" use of the truck); *Progressive Casualty Insurance Co. v. Hoekman,* 359 N.W.2d 685, 687 (Minn.Ct.App. 1984), *pet. for rev. denied,* (Minn. March 21, 1985) (injuries resulting while adjusting a garage door after salesman had run into it with his automobile sufficient to constitute injuries "arising out of the use" of salesman's automobile). *Cf. Holm v. Mutual Service Casualty Insurance Co.,* 261 N.W.2d 598, 603–04 (Minn.1977) (tortious battery by police officer does not "arise out

of the use" of an automobile when the battery is inflicted outside the vehicle and the vehicle is merely used to transport the tortfeasor to the scene of the battery).

2. Once it determined that Kraemer is entitled to coverage under the omnibus clauses of the Transit and Mutual Service policies should McCabe prevail, the trial court next apportioned liability among the insurance companies involved.

The first step in apportioning liability is to determine whether the "other insurance" clauses conflict.

> When it is clear that two or more companies are among themselves liable to the insured for his loss but the apportionment among the companies cannot be made without violating the other insurance clause of at least one company, *then the courts must look outside the policies for rules of apportionment.*

*Integrity Mutual Insurance Co. v. State Automobile & Casualty Underwriters Insurance Co.,* 307 Minn. 173, 174–75, 239 N.W.2d 445, 446 (1976) (emphasis supplied). *See Gamble Skogmo, Inc. v. Aetna Casualty & Surety Co.,* 390 N.W.2d 343, 347 (Minn.Ct.App.1986). All the parties here agree that the "other insurance" clauses at issue conflict.

The second step is to "allocate respective policy coverages in light of the total policy insuring intent." *Integrity,* 307 Minn. at 175, 239 N.W.2d at 446. Policies in conflict are stacked in relation to their "closeness to the risk:"

> The nub of the Minnesota doctrine is that coverages of a given risk shall be "stacked" for payment in the order of their closeness to the risk. That is, *the insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the most incidental to the basic purpose of its insuring intent will be liable last.* If two coverages contemplate the risk equally, then the two companies providing those coverages will prorate the liability between themselves

on the basis of their respective limits of liability.

*Id.* at 175–76, 239 N.W.2d at 447 (emphasis supplied).

Three factors are considered in determining closeness to the risk:

> (1) Which policy specifically described the accident-causing instrumentality?
>
> (2) Which premium is reflective of the greater contemplated exposure?
>
> (3) Does one policy contemplate the risk and use the accident-causing instrumentality with greater specificity than the other policy—that is, is coverage of the risk primary in one policy and incidental to the other?

*Auto Owners Insurance Co. v. Northstar Mutual Insurance Co.,* 281 N.W.2d 700, 704 (Minn.1979).

In this case, the trial court determined that the Great American policy is primary to both the Transit and Mutual Service policies and that the Transit policy is primary to the Mutual Service policy; priority of coverage as between Transit and Mutual Service is not contested on appeal. For the following reasons, we believe that the third factor set out above compels reversal on this issue.

As to the first factor, the Transit and Mutual Service policies specifically describe the semi-tractor and the trailer (the accident-causing instrumentalities) in endorsements; the Great American policy does not describe either vehicle.

As to the second factor, Kraemer, in paying a separate premium and purchasing a supplement to cover "any auto," intended (and the Great American policy specifically contemplated) that coverage would extend to Kraemer's negligent operation of both owned and *non*-owned vehicles involved in construction projects. Since our answer to the first question posed by *Auto Owners* is Transit and Mutual Service and our answer to the second question is Great American, we turn to the decisive third question.

In determining the Great American policy to be closest to the risk, the trial court found that "[a]ll of the alleged acts of negligence which potentially caused the injuries in *McCabe* are included within the 'insuring intent' of the Great American policy" and that the accident was more closely akin to a construction accident than a motor vehicle accident.

Transit contends that since potential negligence claims at trial additionally relate to surface preparation and route selection (risks incident to construction and not motor vehicle accidents), the trial court properly determined that Great American coverage was primary. Mutual Service asserts that even if the sole basis of Kraemer's liability is found to be its negligent supervision and control of the vehicles, the Great American policy is still primary since the construction business, by nature, contemplates such risks.

■ We are disturbed by this focus on Kraemer's potential negligence. The closeness to the risk test is premised on the causal relationship between the injury and the accident-producing instrumentality, *not* the causal link between a party's potential negligence and the cause of the injuries. The closeness to the risk test is separate from any dispute among defendants as to whose actions negligently contributed to the accident.

Priority of coverage based on fault evokes memories of the primary tortfeasor doctrine, a doctrine expressly overruled by the supreme court in *Woodrich:*

> 6. The application of rules of construction based upon some relatively arbitrary circumstance—such as holding the insurer of the primary tortfeasor primarily liable; holding the specific insurer liable to the exclusion of the more general insurer; or fixing primary liability upon the insurer first issuing its policy in point of time—brings about a circuity of reasoning and inequitable and confusing results which have little relation to contractual intent or regard for the contractual rights of the parties. In determining the respective liabilities of insurance coverage in cases of overlapping coverage, *the decision must rest upon a construction of the language employed by*

*the respective insurers and not upon any so-called primary-tortfeasor doctrine or upon any other arbitrary rule or circumstance. Any language in any of our decisions subject to a contrary interpretation is expressly overruled.*

*Woodrich,* 252 Minn. at 97–98, 89 N.W.2d at 420–21 (footnotes omitted) (emphasis supplied).

 We hold the Transit and Mutual Service policies contemplated "the risk and use of the accident-causing instrumentality" with greater specificity than the Great American policy and must be deemed to provide primary coverage. The fact that the accident occurred on a construction site is not in itself dispositive of the priority of coverage question. The Transit and Mutual Service policies define the accident-causing instrumentalities with precision, while the Great American policy makes no reference whatever to the vehicles involved in the accident. Further, separate premiums were paid when these vehicles were added respectively to Transit and Mutual Service policies. These premiums directly reflect the risk that occurred in this case—an injury arising out of the use of the described vehicle. *See, e.g., Auto Owners,* 281 N.W.2d at 704 (comprehensive liability policy primary over a homeowners policy following a boat accident since it described the "accident-causing instrumentality," an additional premium to cover the described instrumentality was paid and because the comprehensive policy was designed to insure against accidents); *Transamerican Insurance Co. v. Austin Farm Center, Inc.,* 354 N.W.2d 503 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Feb. 6, 1985) (automobile liability policy covering a fire truck, the "accident-causing instrumentality," closer to the risk than a policy covering the driver of the vehicle); *Federated Mutual Insurance Co. v. American Family Mutual Insurance Co.,* 350 N.W.2d 425, 427 (Minn.Ct.App.1984) (insurer of an automobile, the "accident-causing instrumentality," closer to the risk than insurer of driver).

## DECISION

The trial court did not err in concluding that Kraemer is an omnibus insured under the Transit and Mutual Service policies. The trial court erred in finding that the Great American policy was primary to the Transit and Mutual Service policies. As a matter of law, the Transit and Mutual Service policies provide primary coverage and Great American secondary coverage.

Affirmed in part, reversed in part and remanded.