ATLANTIC MUTUAL INSURANCE
COMPANY et al., Appellants,

v.

GULF INSURANCE COMPANY,
Appellee.

No. 8724.

Court of Civil Appeals of Texas,
Texarkana.

Dec. 31, 1980.

Charles R. Dunn, Clare K. Steadham,
Wyckoff, Russell, Dunn & Frazier, Houston,
for appellants.

Richard Sheehy, Donald B. McFall, But-
ler, Binion, Rice, Cook & Knapp, Wayne
Fisher, Fisher, Roch & Gallagher, Houston,
for appellee.

CORNELIUS, Chief Justice.

This case involves the meaning of the
term "borrower" as used in an automobile
liability insurance policy. In November of
1973, Carl J. Jenney, Jr., a driver for Daily
Truck Lines, was injured while a Daily
truck was being loaded at the premises of
Drilling Tools, Inc. Jenney brought an ac-
tion for damages against Drilling Tools,
alleging that the accident was caused by
the negligence of George Mallory, one of
Drilling Tools' employees. The case was
settled in December of 1974. At the time
of the accident Daily Truck Lines was cov-
ered by a general automobile liability policy
issued by Gulf Insurance Company. When
Jenney filed suit, Drilling Tools demanded
that Gulf provide coverage and defense of
the lawsuit under the terms of the policy it
had issued to Daily. Gulf refused, where-
upon Atlantic Mutual Insurance Company
and Holland America Insurance Company
provided the necessary coverage and de-
fense for Drilling Tools under policies they
had issued to it. Atlantic Mutual, Holland
America and Drilling Tools then filed this
action seeking a declaratory judgment that
Gulf was required to indemnify them, under
the terms of its policy to Daily, for portions

of the amounts of their settlement to Jenney.

Gulf's policy states that it will provide coverage for any insured who is found liable for injuries caused by the ownership, maintenance or use, including loading or unloading, of any automobile, but coverage under the loading or unloading clause is limited to a small class of persons, including "lessees or borrowers" of the vehicle. There was no contention that Drilling Tools was a lessee of the truck, and the sole issue before the trial court was whether Drilling Tools was a "borrower" of the truck so as to entitle it to coverage under the policy issued by Gulf to Daily.

The trial court sustained Gulf's motion for summary judgment, holding as a matter of law, based upon the summary judgment evidence, that Drilling Tools was not entitled to coverage because it was not a borrower of the truck within the meaning of the insurance policy.

Mr. Jenney was injured when he and another Daily employee, Walton Long, took the truck to Drilling Tools' yard to be loaded with steel pipe for delivery to one of Drilling Tools' customers. George Mallory, a Drilling Tools' employee, directed Long to park the truck near a pipe rack, and with the assistance of Long and Jenney he began lifting pipe onto the truck with a fork lift. Through Mallory's negligence, some of the pipe came loose and struck Jenney, throwing him to the ground and seriously injuring him. The appellants contend that the judgment against them was not proper because the summary judgment proof raised a genuine material issue of fact as to whether Drilling Tools was a borrower of the truck when the accident occurred.

The summary judgment evidence included two affidavits. One of them was by Steven Kennedy, the vice president in charge of operations for Drilling Tools. He stated that Mallory and the yard manager, Reinhard Kitzman, both had the authority to shut down loading or unloading operations at the Drilling Tools yard, and to send a truck off the yard empty if they felt the operations were not being safely conducted.

He also stated that both Kitzman and Mallory commonly instructed drivers where to park in the yard, and that on the date of the accident involved here Mallory had in fact told the driver of the Daily truck where to park. The other affidavit was from Mr. Mallory. He stated that when the Daily truck driver inquired where to park the truck, he (Mallory) told him to park it near the pipe racks for the loading. He also stated that on previous occasions he had stopped loading or unloading operations when he thought they were unsafe and had actually sent trucks away from the yard empty in those circumstances. Several depositions taken in the original damage action by Jenney against Drilling Tools were also included in the summary judgment evidence. Testimony in those depositions generally corroborates the statements made in the affidavits concerning the authority of Kitzman and Mallory to direct trucks where to park and to generally supervise loading or unloading operations and to shut them down when they considered them unsafe.

The term "borrower" as used in the loading and unloading provisions of the insurance policy involved here means someone who has, with the permission of the owner, *possession* and *use* of the vehicle for his own purposes. *Liberty Mutual Insurance Company v. American Employers Insurance Company,* 556 S.W.2d 242 (Tex. 1977). General supervision or even the actual performance of loading or unloading operations will not constitute one a borrower of the vehicle involved; there must be evidence of possession. *Liberty Mutual Insurance Company v. American Employers Insurance Company,* supra. It is undisputed that none of Drilling Tools' personnel had actual physical possession of Daily's truck, but appellants contend that Drilling Tools had constructive possession by reason of its right to control and supervise the truck during loading operations. They rely upon only two facts in their summary judgment proof to raise an issue on this point: (1) that Mallory directed the driver where to park the truck for loading; and (2) Drilling Tools' right to shut down loading and

unloading operations if they determine them to be unsafe, including the right to send a truck away from the yard empty.

In our view those two facts, standing alone, are insufficient to raise a genuine issue of fact as to Drilling Tools' status as a borrower of the truck. Although the guiding of a vehicle by another when the driver is deprived of vision and is wholly dependent upon the other for direction may constitute such an actual control of the vehicle as to amount to a "use" of the truck,[1] the mere statement to a driver that he should park the truck at a particular place is no evidence that the person giving the direction has taken possession of the truck.[2]

Neither do we think, in the context of this case, that the fact that Drilling Tools' employees had the right to shut down operations if they considered them unsafe constitutes any evidence that they had possession of Daily's truck. The right to terminate operations for safety's sake is a right of supervision, but it is not *possession* and *use* of the vehicle, at least not in the circumstances of this case.

There being insufficient summary judgment proof to raise a genuine issue of fact concerning Drilling Tools' status as a borrower of the truck, Gulf's motion for summary judgment was properly granted.

The judgment is affirmed.

1. That such control may constitute a "use" of a vehicle, see *Woodrich Construction Co. v. Indemnity Ins. Co.*, 252 Minn. 86, 89 N.W.2d 412 (1958); *Liberty Mutual Insurance Company v. Steenberg Construction Company*, 225 F.2d 294 (8th Cir. 1955); *Liberty Mutual Insurance Company v. American Mutual Insurance Company*, 28 N.J.Super. 17, 99 A.2d 815 (1953); Annot., 18 A.L.R.3d 814 (1965). But the policy provisions involved here, as construed by *Liberty Mutual Insurance Company v. American Employers Insurance Company*, supra, require both *use* and *possession*.

2. *Nicollet Properties, Inc. v. St. Paul Mercury Insurance Co.*, 271 Minn. 65, 135 N.W.2d 127 (1965); 18 A.L.R.3d 804 (1965). See also *Wellman-Lord Engineers, Inc. v. Northwestern Mutual Insurance Company*, Fla., 222 So.2d 436 (1969); and *J. Scheer & Sons Co. v. Travelers Indemnity Co.*, 35 Misc.2d 262, 229 N.Y.S.2d 248 (1962); Annot., 18 A.L.R.3d 814 (1965).