APCON CORPORATION, as Joint Venturer, *et al.*, Plaintiffs-Appellants, v. DANA TRUCKING, INC., Defendant (Northland Insurance Company, Defendant-Appellee).

Fourth District   No. 4—93—0239

Opinion filed October 28, 1993.

Michael J. Tague, of Flynn, Palmer & Tague, of Champaign, for appellants.

James K. Horstman, David E. Neumeister, Barry L. Kroll, and Lloyd E. Williams, Jr., all of Williams & Montgomery, of Chicago, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Plaintiffs Apcon Corporation (Apcon) and its liability insurer Bituminous Casualty Corporation filed this action for declaratory judgment on February 27, 1992, in the circuit court of Champaign County. Plaintiffs claimed that Apcon was entitled to coverage under a liability insurance policy issued to defendant Dana Trucking, Inc. (Dana), by defendant Northland Insurance Company (Northland) with respect to a wrongful death action filed by the estate of Ellen Schulze. The dispute turned upon the question of whether Ap-

con's actions at the time of decedent's injury constituted "use" of one of Dana's vehicles within the meaning of the liability policy.

On February 26, 1993, following a hearing on the parties' cross-motions for summary judgment, the trial court granted Northland a summary judgment, finding as a matter of law Northland did not owe a duty to defend or indemnify Apcon in the underlying case, because Apcon was not an "insured" under the policy.

Plaintiffs maintain on appeal the trial court erred in concluding that Apcon was not a permissive user of the trucking company's vehicles when an employee of Apcon, acting as a "spotter," directed—through the use of hand signals—the backing up of a truck which was leased to Dana Trucking, so that the truck struck and injured decedent Ellen Schulze. We affirm.

In the underlying third-amended complaint of the wrongful death action against Apcon, Dana Trucking and Joseph Bermingham, who was the driver of the truck, Frank Schulze, administrator of the estate of Ellen Schulze, deceased, alleged in part as follows: (1) on September 15, 1989, Ellen was working as an employee of the Illinois Department of Transportation at a construction site in Champaign County; (2) Apcon was in charge of the erection, construction and paving of a road at that site; (3) on that date, a truck operated by Bermingham was backing into the construction site to deliver materials and struck Ellen, causing her death; (4) Bermingham was an employee or agent .of Dana Trucking, which was a subcontractor to Apcon; (5) at the time of the accident, Apcon had a contractual right to direct and control the vehicles of subcontractors and suppliers of equipment and materials as they entered the construction site; and (6) an employee of Apcon, identified as a spotter, directed and controlled the operation of the truck driven by Bermingham when it struck and injured the decedent.

The complaint alleged Apcon was negligent in one or more of the following respects:

"(a) directed and controlled the movement of the vehicle driven by defendant BERMINGHAM so as to strike and injure decedent, ELLEN MARIE SCHULZE;

(b) failed to warn the driver of the truck that workers were in the area, including plaintiff's decedent;

(c) failed to direct the driver of the truck as he backed into the construction site to avoid plaintiff's decedent;

(d) failed to require motorized vehicles at the construction site to have audible warnings when being backed into the construction site;

(e) failed to stop the unsafe practice of Joseph E. Bermingham of backing into the construction site without audible warning signs."

At the time of the incident, Dana Trucking was insured by a liability insurance policy issued by Northland, which provided in part:

"PART IV — LIABILITY

A. WE WILL PAY

1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership maintenance or use of a covered auto.

2. We have the right and duty to defend any suit asking for these damages.

\* \* \*

D. WHO IS INSURED.

1. You are an insured for any covered auto.

2. Anyone else is an insured while using with your permission a covered auto you own, hire or borrow \*\*\*."

In the complaint for declaratory judgment, plaintiffs alleged the truck which struck the decedent had been furnished by Dana Trucking to Apcon pursuant to a master subcontract agreement. In that agreement, Apcon was identified as "Contractor" and Dana Trucking as "Subcontractor." The agreement provided as follows:

"3. *Subcontractor Status.*

The relationship of Subcontractor to Contractor shall be that of an independent contractor and nothing herein shall be construed as creating an employer/employee or principal/agent relationship between the parties. Subcontractor shall be solely responsible for the equipment, means, methods, techniques, and safety precautions used to perform the work or any part thereof, and for the furnishing of and payment for all costs, expenses, and taxes incurred to perform the work on any part thereof."

The agreement also provided that Dana Trucking was to supply insurance coverage for Apcon to cover claims for personal injury which might arise from operations under the subcontract.

Apcon admitted in the complaint for declaratory judgment it was insured by a liability policy issued by Bituminous Casualty with liability limits of $1 million per occurrence. Apcon contended, however, it was also entitled to coverage under the Northland policy issued to Dana Trucking pursuant to the clause stating Northland would provide insurance to anyone "using" a covered auto with permission of Dana Trucking.

Appended to Apcon's motion for summary judgment was the deposition of Bermingham. Bermingham stated when he was on the construction site, there was always a spotter to direct him when he backed his truck up, and an Apcon foreman, Mike Eastin, told him what to do. He said the spotter would use hand signals to communicate.

Wardell Briggs, an employee of Apcon, testified in a deposition that he often assisted trucks backing onto the construction site. He denied, however, that he was present or that he participated in any way in the backing operations of the truck at the time of the accident.

The circuit court, in ruling in favor of Northland, specifically found that no genuine issue of material fact existed, and Northland was entitled to judgment as a matter of law. The court noted Apcon and Bituminous had failed to present any authority to justify an extension of the "permissive user" concept to the circumstances alleged in the Schulze complaint. The court determined that when the parties entered into the policy contract, they did not contemplate the definition of "user" to include a spotter working for a road contractor, who is guiding an independently contracted truck delivering materials to a jobsite. The court then entered a finding pursuant to Supreme Court Rule 304(a). 134 Ill. 2d R. 304(a).

■■ In Illinois, an insurer's duty to defend an action against an insured is determined by the allegations of the underlying complaint. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 393, 442 N.E.2d 245, 247.) Plaintiffs maintain the complaint against the insured should be liberally construed, with any doubts as to coverage to be resolved in the insured's favor. (*Western Casualty & Surety Co. v. Adams County* (1989), 179 Ill. App. 3d 752, 757, 534 N.E.2d 1066, 1068.) To do so would require a finding that Apcon is an "insured," because it was "using" the truck with permission of the insured.

Plaintiffs argue that no basis exists for a conclusion that only one person at a time can be "using" a vehicle. They cite *Orrill v. Garrett* (1968), 100 Ill. App. 2d 194, 197, 241 N.E.2d 1, 3, where

this court indicated "the word 'use' is much broader than the term 'operate' or 'drive.'" This court noted, however, that the implied permission to use a vehicle, such as to bring into effect the clause of a liability insurance policy covering persons using the vehicle with permission of the owner, involves an inference or circumstances arising from a course of conduct or relationship between the parties in which there is a mutual acquiescence or lack of objection under circumstances signifying permission. This court stated:

> "We assume there was an implied permission for Garrett to use the truck by leaning against it if he were tired or rest his foot on the bumper while he tied his shoe. It is submitted that such use does not mushroom into a permission to operate the truck." *Orrill*, 100 Ill. App. 2d at 198, 241 N.E.2d at 4.

Plaintiffs also cite *Thomas v. Aetna Casualty & Surety Co.* (1975), 28 Ill. App. 3d 363, 328 N.E.2d 374, where this court examined the question of whether the actions of Thomas and O'Brien, in mounting the front fender of a car driven by Campbell, were a "use" of the Campbell car pursuant to a liability insurance policy. In holding that this conduct did not constitute such "use," this court indicated that a number of factors determine whether "use" brings about coverage as an additional insured. Among those factors was the "[c]ontrol of operation." *Thomas*, 28 Ill. App. 3d at 367, 328 N.E.2d at 377.

Plaintiffs maintain that the allegations of the Schulze complaint indicate Apcon was in control of the Dana truck in two ways: first, Apcon could determine whether the truck could even be present on the construction site; and second, it determined what materials were to be delivered, where those materials would be loaded, and where they would be unloaded. Apcon also claims that the spotter's use of hand signals to the backing truck was a way of controlling the vehicle. Apcon contends Briggs, as the spotter, and Bermingham, as the driver, were jointly operating or jointly driving at the time of the accident. Finally, plaintiffs argue Apcon was "using" the Dana truck and its driver in the sense that it was employing them to move concrete pursuant to the master subcontract agreement, regardless of whether anyone was spotting.

Plaintiffs maintain they are entitled to coverage under Dana's Northland policy, because plaintiffs were liable for acts and omissions of Dana due to plaintiffs' ordering or directing the acts that caused the harm. *Dvorak v. Primus Corp.* (1988), 168 Ill. App. 3d 625, 633, 522 N.E.2d 881, 886.

Plaintiffs also cite cases from other jurisdictions in support of their contention that a spotter who uses hand signals to guide the driver of a truck is "using" the vehicle, such that he would be an additional insured.

For example, *Liberty Mutual Insurance Co. v. Steenberg Construction Co.* (8th Cir. 1955), 225 F.2d 294, was a case construing Minnesota law, where a general contractor was seeking indemnity from a subcontractor following a judgment in a personal injury action. The court determined that, in the absence of any controlling local criteria, liability insurance policy language similar to that in the instant case provided coverage to a general contractor who directed the movements of a subcontractor's truck, by supervising and signalling from the rear of the truck. The trial court held, in granting recovery against the subcontractor's insurer, that the directing by the general contractor of the backward movement of the truck made the participation of the general contractor such an immediate part of the actual operating of the truck as to make the general contractor "a person 'using the automobile', or in any event a person 'legally responsible for the use thereof', within the language and coverage of the omnibus clause of the policy." *Steenberg,* 225 F.2d at 296.

Similarly, in *Woodrich Construction Co. v. Indemnity Insurance Co.* (1958), 252 Minn. 86, 89 N.W.2d 412, the plaintiff insured (Woodrich) brought an action against three insurers to recover the amount it had paid in settlement of damages to a man injured when a subcontractor's truck backed over him. In the underlying case, the jury awarded the injured plaintiff $80,000 against Woodrich only. The subcontractor and the driver of the truck were found to be not liable.

On appeal, the court noted that Woodrich assumed exclusive control over the truck the moment the truck entered into the congested area, because Woodrich employed the truck to carry out its own purpose of constructing a concrete pavement. (*Woodrich*, 252 Minn. at 93, 89 N.W.2d at 418.) The court determined Woodrich was "using" the motor vehicle by controlling or guiding its movement.

Contrary to plaintiffs' assertion, however, because of the small number of cases that have raised this issue, there does not appear to be a clear minority/majority view on it.

In *Wellman-Lord Engineers, Inc. v. Northwestern Mutual Insurance Co.* (Fla. Dist. Ct. App. 1969), 222 So. 2d 436, in an action by a plaintiff for indemnification from subcontractor Redi-Mix Com-

pany's liability insurance, the appellate court affirmed the trial court's grant of a defendant's motion for summary judgment. The court noted the sole question on appeal was whether the trial court erred in granting that defendant's motion on the issue of liability as a matter of law.

The record in *Wellman* indicated plaintiff was a general contractor in the process of constructing an underground vault. On the date in question, John Atkins, an employee of plaintiff, was in charge of directing the unloading of concrete trucks, and he directed a truck driven by Joseph Gates, an employee of Redi-Mix, alongside the pit. Gates had been instructed by Redi-Mix to rely upon an employee of the plaintiff for directions in backing the truck alongside the pit prior to unloading. Atkins negligently directed Gates to back the truck too close to the edge of the pit, and the truck fell in, damaging the truck and injuring Gates.

Redi-Mix had a liability insurance policy which defined the word "insured" in virtually the same language as that used in the Northland policy in question here. Plaintiff contended it was "using" Redi-Mix's truck within the meaning of the policy when the truck fell into the pit. Plaintiff cited the previously discussed case of *Woodrich*.

The *Wellman* opinion noted that although *Woodrich* supported the plaintiff's contention, the weight of authority and better view was to the contrary. No Florida case on this point was cited or found. The court held that merely giving directions for a movant is not such "use" of the truck as to bring the contract within the truck's liability insurance coverage and concluded the defendant was entitled to judgment on the issue as a matter of law. *Wellman*, 222 So. 2d at 438.

■ We conclude Apcon was not a user of the Dana vehicle within the meaning of the Northland policy. The Illinois cases of *Orrill* and *Thomas* do not require that the term "use" be extended as plaintiffs suggest. No Illinois case has been cited or found in which a court has determined a general contractor's directing the movements of a subcontractor's truck through use of hand signals is a "use" of the truck under a policy with language such as that here. If that interpretation were to be given to the policy, would not a store employee's directing a delivery truck where to park by pointing, or a police officer's directing a motorist where to go by hand signals, also be a "use" of a vehicle within the meaning of similar policies? We reject the reasoning of *Steenberg* and *Woodrich* and conclude that *Wellman* was properly decided.

We conclude that in order to constitute a "use" or to be a "user" under the policy, such as to be an insured, one must be in operation of the vehicle.

Finally, any conflict between the testimony of Briggs and Bermingham as shown by their depositions presented with the motion for summary judgment does not create a question of fact such as to defeat a motion for summary judgment relating to a duty to defend. The trial court granted defendants' motion for summary judgment, assuming Briggs was acting as a spotter and assisted Bermingham in the backward movement of the truck, on the basis that Briggs was not a "user" of the vehicle under the policy. We agree with the court's conclusion.

Accordingly, for the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.