## Goodville Mutual Casualty Company v. Tripp

C.P. of Lancaster County, no. CI-98-07264.

*Jeffery D. Wright,* for plaintiff
*Edith A. Pearce, Glenn A. Ricketti, Scott A. Bennett* and *Richard W. Johnson,* for defendants.

FARINA, *J.,* March 17, 2000—Before this court are the cross-motions for summary judgment filed by plaintiff Goodville Mutual Casualty Insurance Company and defendants Harold R. Tripp Jr., Susan B. Grant, Southeastern Pennsylvania Transportation Authority, Carl P. Warner, Warner Construction Inc. and Joseph James. In this declaratory judgment action, Goodville seeks a determination whether they must provide a defense and indemnification to defendant Tripp under certain insurance policies. Goodville requests summary judgment in their favor, against defendants and a declaration that they have no such duty. Defendants oppose, filing cross-motions in their favor, and claim coverage is due Tripp under his commercial liability policy with Goodville.

This action arises from a motor vehicle accident which occurred on Route 252 in Chester County, Pennsylvania. On November 18, 1997, at approximately 6 p.m., defendants Harold R. Tripp Jr. and Carl Warner arrived on Harrow Lane, a side street of Route 252, for the purposes of delivering a backhoe to a nearby landscaping job being performed by Tripp. Warner was using his corporation's dump truck and trailer to deliver the backhoe as a favor to Tripp. Tripp was a passenger in the dump truck driven by Warner. At the time, Tripp was a self-employed landscaper. After unloading the backhoe, Tripp drove the backhoe off the trailer and onto a nearby piece of property where he would eventually be performing the landscaping services. Warner, after examining Harrow Lane and realizing that it was a dead end, concluded that he had no recourse other than to back out

onto Route 252. When Warner was ready to back up, Tripp located himself at the right end of the trailer to signal to Warner when to begin backing up his vehicle. During this process, Tripp noticed the headlights of an approaching vehicle and told Warner to stop the vehicle. Tripp then left the roadway and went to a grassy area on the side of the road. The headlights turned out to be a SEPTA bus. The SEPTA bus, driven by defendant Joseph James, struck the back of Warner's trailer. Following impact, the bus crossed over into oncoming traffic and landed on top of defendant Susan Grant's vehicle. As a result, Grant received substantial injuries.

On March 31, 1997, Grant commenced a civil action in the Philadelphia County Court of Common Pleas, naming SEPTA, Joseph James, Carl Warner, Warner Construction and Harold Tripp as defendants. On June 29, 1998, Goodville filed this declaratory judgment complaint, seeking a declaration that they have no duty to defend or indemnify Tripp.

There is no dispute that at the time of the accident, Tripp was insured by Goodville under a commercial liability policy, a personal auto policy and a homeowners policy. Tripp had no commercial auto policy because he did not have any commercial motor vehicles. Goodville is attempting to deny coverage under all three policies. Defendants have conceded that Tripp is not owed coverage pursuant to his personal auto policy and homeowners policy because of the applicability of policy exclusions for incidents arising out of commercial activity of an insured; however, they argue that Tripp is owed a defense and indemnification under Tripp's commercial liability policy with Goodville. Goodville does not dispute that Tripp was engaged in his trade, profession or occupation as a landscaper at the time of the accident, thus

triggering coverage under the commercial liability policy. Therein Goodville agreed to "pay all sums which an insured becomes legally obligated to pay as damages due to bodily injury or property damage to which this insurance applies." But Goodville contends a coverage exclusion for "bodily injury or property damage that arises out of the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of (b) an auto . . ." is applicable because Tripp was "using" or "supervising" the Warner vehicle at the time that Warner's vehicle was struck by the SEPTA bus. All parties agree construction of the terms "use" and "supervision" will be dispositive of the parties claims and that the case, since there are no disputed material facts, is appropriate for disposition by summary judgment.

## RULES OF CONSTRUCTION

When construing insurance policies, we are guided by well-established principles of construction. Coverage clauses in liability policies are to be broadly construed to afford the insured the greatest protection possible. *Miller v. Prudential Insurance Company of America,* 239 Pa. Super. 467, 362 A.2d 1017 (1976). Exceptions to or exclusions from coverage are to be strictly construed against the insurance company and in favor of the insured. *Slate Construction Co. v. Bituminous Casualty Corp.,* 228 Pa. Super. 1, 323 A.2d 141 (1994). When an insurance policy contains ambiguous language the language is to be construed in favor of the insured and against the insurer, the drafter. *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). Insurers may not enforce overly-subtle or technical interpretations in an unfair attempt to defeat the reasonable coverage expectations of an insured.

*Hartford Mutual Insurance Co. v. Moorhead,* 396 Pa. Super. 234, 240, 578 A.2d 492, 495 (1990).

## USE

It is Goodville's position that the interaction between Tripp, who was standing outside of the vehicle, and Warner, who was operating the vehicle, was sufficient to constitute Tripp's "use" of the vehicle. Use is not defined in Tripp's commercial liability policy. Likewise, we are not aware of any case in Pennsylvania that has addressed whether someone outside of a vehicle who provides the driver with direction is "using" the vehicle. The closest fact pattern we have found is the Pennsylvania federal case of *Aul v. United States Fidelity and Guaranty Co.,* 692 F. Supp. 585 (W.D. Pa. 1988). There, the district court ruled that a passenger who directed the driver that it was clear to back his vehicle was held to be using the vehicle. The court specifically noted, however, that they were not ruling upon whether use could extend to someone directing the driver who was outside the vehicle. "We thus refrain from considering . . . if one can 'use' an automobile without occupying it." *Id.* at 587. Here, clearly Tripp was not occupying the vehicle, thus *Aul* is of little guidance.

In *Erie Insurance Exchange v. Transamerica Insurance Co.,* 516 Pa. 574, 582, 533 A.2d 1363, 1367 (1987) the court discussed the meaning of the term "use" in an automobile insurance policy. Although the facts are not applicable here, the court's cautionary guidance concerning construction of the term is instructive: "if the term 'use' is construed to embrace all of its possible meanings and ramifications, practically every activity of mankind would amount to a 'use' of something. However,

the term must be considered with regard to the setting in which it is employed." *State Farm Mutual Automobile Insurance Co. v. O'Brien,* 380 F. Supp. 1279, 1281 (1974).

Guided by *Erie,* we therefore consider the meaning of "use" in a commonsense context of use of an automobile.

While Pennsylvania has not yet decided whether someone outside the automobile directing the driver (sometimes referred to as a spotter) is using the vehicle, other jurisdictions have and are split. We will review the authorities cited and discussed by the parties.

In *Apcon Corp. v. Dana Trucking,* 25 Ill.App.3d 973, 623 N.E.2d 806 (1993), the Illinois court held that a road contractor's directing movements of a subcontractor's truck through use of hand signals was not a use of the truck for purposes of the subcontractor's liability policy. The court held that if the spotter was determined to be using the vehicle then "would not a store employee's directing a delivery truck where to park by pointing, or a police officer directing a motorist where to go by hand signals, also be 'use' of a vehicle within the meaning of similar policies." *Id.* at 811. The Illinois court concluded "in order to constitute 'use' or to be a 'user' under the policy, such as to be an insured, *one must be in operation of the vehicle." Id.* (emphasis added)

In *J. Scheer & Sons Co. v. Travelers Indemnity Co.,* 35 Misc.2d 262, 229 N.Y.S.2d 248 (1962), the New York court held that the actions of a construction contractor's employee in directing a concrete mixing truck driver with respect to overhead clearance of sprinkler heads was not "use" of the truck as to bring the contractor within the truck owner's liability insurance coverage. The contractor's "commonplace act of accommodation" did not

take the control of the vehicle out of the hands of the driver. *Id.* at 251.

In *Nicollet Properties Inc. v. St. Paul Mercury Insurance Company,* 271 Minn. 65, 135 N.W.2d 127 (1965), the Minnesota court held that a drive-in theater's employee who stood near an adjacent highway and indicated to perspective patrons the entrance to the theater area, was not using the automobile which, while turning into the entrance was involved in a collision. The court concluded that the drive-in theater employee's function was that of a mechanical device indicating the entrance to parking areas and this was too remote to constitute "use."

In *Wellman-Lord Engineers Inc. v. Northwestern Mutual Insurance Co.,* 222 So.2d 436 (Fla. Dist. Ct. App. 1969), the Florida court held that a general contractor, whose employee directed a truck driver to drive so close to the edge of a pit that the truck fell in, injuring the driver, was not using the truck. The Florida court held that "mere giving directions for a movement is not such 'use' of the truck as to bring the contractor within the truck's liability insurance coverage." *Id.* at 438.

The seminal case to the contrary is *Woodrich v. Indemnity Insurance Company of North America,* 252 Minn. 86, 89 N.W.2d 412 (1958). There, the Minnesota court found that the actions of a turntable operator, giving directions to the driver of a truck while the driver was backing up, constituted use of the vehicle. The Minnesota court held that "where, as an incident of and in furtherance of road construction work, a general contractor assumes active control or guidance of a backward movement of a truck provided by a subcontractor, and his negligence in the exercise of that control or guidance is a proximate cause of the accident, the general contrac-

tor thereby participates in the operation of the truck to such an extent as to be a user of the vehicle." *Id.* at 418.

In *Liberty Mutual Insurance Company v. American Mutual Liability Insurance Company,* 28 N.J. Super. 17, 99 A.2d 815 (1953), an employee of a lumber company drove a lumber truck to a construction site and began unloading the lumber by using a crane. The lumber was being unloaded onto the roof of the building under construction and the crane operator could not see where the lumber was going. The contractor's site foreman stood on the roof and signaled for the lowering of the lumber. While the crane was being operated, a load of lumber struck and injured an individual on the roof. The New Jersey court concluded that "the effect of the action of the foreman was to make the crane operator a mere automaton; he was in effect a blind man and engaging in the particular operation of his crane merely as an instrumentality responding to the will of the (site foreman)." *Id.* at 816-17. The contractor was held to be reponsible for the use of the crane.

With the cautions of *Erie* to not embrace all possible meanings and ramifications of use as our only Pennsylvania guidance, rules of constructions that require us to construe language of exclusion strictly and coverage broadly, ambiguous language in favor of the insured, and where other courts considering the issue have decided it differently, we find that it is reasonable to assume that an insured in the position of Tripp, performing an activity otherwise covered by his commercial insurance policy, would not know nor expect that directing the movement of a vehicle, owned by another, from a position outside of the vehicle, would result in such activity being determined "using" the vehicle so as to cause his otherwise

covered activity to be excluded from insurance coverage.

We believe to construe "use" so as to include Tripp's actions as a spotter for Warner, is to employ the kind of all encompassing expansive definition of the term that *Erie* condemned. The only two cases so defining use cited by plaintiff are distinguishable.

In *Woodrich,* the court was guided by the fact that a general contractor took control of the backward movement of a subcontractor's truck in a common project:

"Where, as an incident of and in furtherance of his construction work, a general contractor assumes active control or guidance of a backward movement of a truck provided by a subcontractor, and his negligence in the exercise of that control and guidance is a proximate cause of the accident, the general contractor thereby participates in the operation of the truck to such an extent as to be a user of the vehicle." *Id.* at 418.

In this case, there was no contractual relationship between Tripp and Warner. Tripp was not a general contractor. He did not have a contractual right and/or contractual duty to direct Warner's movements. There was no agent/servant, master/servant or employer/employee relationship between them. Tripp's actions are better described as a "commonplace act of accommodation that did not take control of the truck out of the hands of the driver." *J. Scheer & Sons Co. v. Travelers Indemnity Co.,* at 251. *Woodrich* is against the weight of authority (see cases cited *supra*) and was cited with disapproval and specifically rejected by *Apcon Corp. v. Dana Trucking* ("we reject the reasoning of . . . *Woodrich*"). *Id.* at 811.

Plaintiff's reliance on *Liberty Mutual Insurance Co. v. American Mutual Liability Insurance* is similarly misplaced. That case involved a contractor's site foreman

directing an employee on the job site in furtherance of a construction project. The court in *Liberty Mutual* found determinative that the crane operator "was a mere automaton; he was, in fact, a blind man engaging in a particular operation of his crane merely as an instrumentality responding to the will of the [site foreman]." *Id.* at 816-17. Such description does not fit Warner. It is undisputed Warner could see northbound traffic going past his trailer as he was backing up. Unquestionably, his view was restricted by the trailer and that is why Tripp assisted, but Warner was not blind or a mere automaton.

We are persuaded that the usual meaning of the word "use," in the context of use of an auto, does not include conduct as engaged in by Tripp, when he for a very brief time served as an outside spotter aiding Warner by signaling as he was backing up his vehicle onto the highway. While he aided the user, he had insufficient authority over the operation and control over the actual operation of the vehicle to be deemed its user.

## SUPERVISION

The Goodville commercial policy excludes from its liability coverage any claims for bodily injury or property damage that arises out of the insured's "supervision" of an auto. It is Goodville's position that Tripp exercised supervision when he assisted Warner in backing his vehicle out of Harrow Lane.

As with the term "use," "supervision" is not defined in the Goodville policy. In an insurance contract, words of common usage must be construed in their natural, plain and ordinary sense and the court may determine its understanding of such terms by considering their dictionary definitions. *Riccio v. American Republic Insurance Company,* 550 Pa. 254, 705 A.2d 422 (1997).

There are many dictionary definitions of supervise and related terms. Webster's II, New College Dictionary, defines supervise as "to direct and watch over the work and performance of." Webster's New Universal Dictionary, 183 (2d ed. 1983) defines supervision as "supervising or being supervised; direction; superintendence." Superintendence is defined as "care and oversight for the purpose of direction, and with authority to direct." "Supervision" is defined in Black's Law Dictionary, 6th Edition (1990) as "An act of occupation or supervising, inspection." Supervise is defined as "To have general oversight over, to superintend or to inspect." Supervisor is defined in pertinent part as "In a broad sense, one having authority over others, to superintend and direct." Superintend is defined as "To have charge and direction of; to direct the course and oversee the details, to regulate with authority; to manage; to oversee with the power of direction; to take care of with authority."

The Pennsylvania Supreme Court in *Swartley v. Harris,* 351 Pa. 116, 118, 40 A.2d 409, 410 (1944), although in an unrelated legal context, addressed the definition of supervise. The court used the Webster's New International Dictionary and determined supervise to mean "to oversee for direction, to superintend; to inspect with authority."

From examining these definitions, it is apparent that the term "supervision" has a range of meanings from a general or expansive definition of directing and watching over, to a more narrow definition that requires an element of control and authority. The Pennsylvania Supreme Court, when determining the definition of supervise, included the element of control. We observe that supervision is not a common term used in connection with vehicles or transportation and are unaware of any

cases that interpret supervision of an automobile in Pennsylvania or in any other jurisdiction. As was the case in construing the term "use," *Erie* requires us to construe "supervision" in the context of supervision of an automobile, and its caution to not be all encompassing applies equally here. So restricted, we find the language "supervision of an auto" as used in Goodville's policy to be ambiguous. In the most expansive sense of the term, Tripp did supervise as he directed and watched over Warner's backing up of the truck. However, Tripp had no authority or control over Warner. There was no formal relationship arising out of contract or employment. Tripp's only authority, if any, came from the consent of Warner to be directed by Tripp. Such consent is transitory at best, capable of being withdrawn at any time for any reason. Tripp was merely providing assistance and guidance to Warner as an accommodation to a friend. Warner was free to reject Tripp's assistance and guidance at any time. Warner controlled every critical function of operating and moving his vehicle. So viewed, the supervision of Tripp does not meet the restrictive definition of supervisor as one who has authority over the supervisee.

Without a definition of "supervision" in the policy, an insured cannot discern in which sense the term is being employed. In such cases, our direction is clear. The term is ambiguous and must be construed in favor of the insured and against exclusion from coverage. In close or doubtful insurance cases, coverage for the insured is to be found. If we should err in determining the meaning of an insurance policy provision, our error should be in favor of coverage for the insured. *Allstate v. Heffner,* 491 Pa. 447, 421 A.2d 629 (1980). To do otherwise would defeat an insured's reasonable expectation of coverage.

In conformance with rules of construction, the ambiguity of the phrase "supervision of a vehicle" must be construed against the drafter, Goodville. So construed, Tripp was not supervising the Warner vehicle and the exclusion is not applicable.

Accordingly, we enter the following:

## ORDER

And now, March 17, 2000, upon consideration of the cross-motions for summary judgment filed by the parties, it is ordered and directed as follows:

(1) Summary judgment is entered in favor of plaintiff Goodville Mutual Casualty Company and against defendants Harold R. Tripp Jr., Susan B. Grant, Southeastern Pennsylvania Transportation Authority, Carl P. Warner, Warner Construction Inc. and Joseph James on Counts II and III of plaintiff's complaint, declaring that Goodville owes no duty to defend and indemnify defendant Harold R. Tripp Jr. in the matter of *Grant v. SEPTA,* Phila.C.C.P., March term 1998, no. 4650 under Goodville's personal auto policy (Count II) and homeowner's policy (Count III) issued to Harold R. Tripp Jr.

(2) Summary judgment is entered in favor of defendants Harold R. Tripp Jr., Susan B. Grant, Southeastern Pennsylvania Transportation Authority, Carl P. Warner, Warner Construction Inc. and Joseph James and against Goodville Mutual Casualty Company on Count I of plaintiff's complaint, declaring that Goodville owes a duty to defend and indemnify defendant Harold R. Tripp Jr. in the matter of *Grant v. SEPTA,* Phila.C.C.P., March term 1998, no. 4650, under Goodville's commercial liability policy (Count I) issued to Harold R. Tripp Jr.