Karl BELSER, Mike Hale, Karl Belser
and Mike Hale t/d/b/a Belser Hale Ex-
cavating, Bituminous Casualty Corpo-
ration, Appellants,

v.

ROCKWOOD CASUALTY INSURANCE
COMPANY, Carla Hervatin as Admin-
istratrix of the Estate of Mark A. Her-
vatin, Deceased, Timothy J. Sturm,
Katherine A. Sturm, Todd Bridge, Ap-
pellees.

Superior Court of Pennsylvania.

Argued Nov. 27, 2001.
Filed Feb. 6, 2002.

Arthur L. Bloom, Pittsburgh, for appellants.

Leo Daly, Pittsburgh, for Rockwood, appellee.

Before ORIE MELVIN, LALLY–GREEN, and BROSKY, JJ.

LALLY–GREEN, J.

¶ 1 Appellants, Karl Belser, Mike Hale, Belser Hale Excavating (collectively, Belser–Hale), and the Bituminous Casualty Corporation (Bituminous), appeal from the order dated November 14, 2000, granting preliminary objections in the nature of a demurrer filed by defendant/Appellee, Rockwood Casualty Insurance Company (Rockwood). We affirm.

¶ 2 The factual and procedural history of the case is as follows. Mark A. Hervatin, a dump truck operator, died after his truck came into contact with power lines on a construction site. Belser Hale Excavating, an excavation company, had hired Hervatin to haul dirt away from the site.[1]

¶ 3 Hervatin's estate filed suit against Belser–Hale and others. In this lawsuit (the "underlying action"), the estate alleged in rather general terms that a Belser–Hale employee provided negligent directions to Hervatin on the site, thus causing his dump truck to come into contact with the power lines. The sole factual allegation in the complaint relating to this claim reads as follows:

---

1. Timothy and Katherine Sturm owned the construction site. Todd Bridge was the general contractor on the project. Bridge hired Belser–Hale as excavation subcontractors.

On the above mentioned day at approximately 12:30 p.m. the decedent was performing the work he had contracted to do. As the decedent was operating his dump truck so as to dump a load of earth, an agent, servant and/or employee of the defendant Belser, Hale, and/or Belser Hale Excavating undertook to direct the decedent so as to dump his load safely. As a result of the negligent directions of the agent, servant and/or employee of the defendant's the decedent was caused to bring his dump truck in contact with high tension power lines. As the decedent attempted to exit his vehicle he was caused to be electrocuted and subsequently die.

Docket Entry 18 (Declaratory Judgment Complaint), Exhibit C, ¶ 11.[2]

¶ 4 Bituminous insured Belser–Hale under an automobile and commercial general liability policy. Rockwood insured Hervatin under a commercial automobile policy. The Rockwood policy reads, in relevant part, as follows:

**Section II—Liability Coverage**

**A. Coverage**

[Rockwood] will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a covered "auto".

**1. Who is an Insured**

The following are "insureds":

a. You [Hervatin] for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow . . .

e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

. . .

**SECTION V. TRUCKERS CONDITIONS**

. . .

**B. General Conditions**

**5. Other Insurance—Primary and Excess Insurance Provisions**

a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority . . .

Docket Entry 18 (Declaratory Judgment Complaint), Exhibit B, pp. 2, 3, 10.

¶ 5 On March 21, 2000, Belser–Hale and Bituminous filed a declaratory judgment action against Rockwood. These parties sought a declaration that Rockwood has a duty to defend and indemnify Belser–Hale in the underlying action for two reasons: (1) Belser–Hale was a "user" of the dump truck (and thus an insured) because a Belser–Hale employee was directing Hervatin's actions; and (2) even if Belser–Hale did not "use" the truck, it was "liable for" the conduct of an insured (namely, Hervatin). They also sought a declaration that Rockwood's coverage was primary over the coverage of Bituminous.

¶ 6 On May 5, 2000, Rockwood filed preliminary objections in the nature of a demurrer, arguing that it has no duty to defend or indemnify Belser–Hale. On November 14, 2000, the trial court sustained

**2.** In its Opinion under Pa.R.A.P.1925, the trial court indicated that it was "familiar with the undisputed facts of the underlying cause of action." Trial Court Opinion, 5/16/2001. The court then set forth a detailed factual background to the underlying action. Because these facts were not set forth in the underlying complaint, neither this Court nor the trial court is permitted to consider them. *Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881, 883 (Pa.Super.2000).

the preliminary objections and ruled that Belser–Hale is not an "insured" under the Rockwood policy. Thus, the court dismissed the declaratory judgment action with prejudice. This appeal followed.

¶ 7 Appellants raise three issues on appeal:

1. Is a contractor an "insured" under the omnibus clause of a subcontractor's commercial automobile insurance policy, which insures anyone "using" the covered auto, where an employee of the contractor is alleged to have been supervising, controlling and directing the movement of the covered auto.

2. Is a contractor an "insured" under the omnibus clause of a subcontractor's commercial automobile insurance policy, which insures anyone liable for the conduct of an insured, where the contractor is alleged to be liable for the actions of the subcontractor and the loss at issue.

3. Does a subcontractor's commercial automobile insurance policy provide primary coverage for a loss involving the covered auto?

Appellants' Brief at 3.

■■■■ ¶ 8 Our scope and standard of review are well settled. A preliminary objection in the nature of a demurrer "tests the legal sufficiency of the complaint." *Vulcan v. United of Omaha Life Ins. Co.*, 715 A.2d 1169, 1172 (Pa.Super.1998) (citation omitted), *appeal denied*, 764 A.2d 50 (Pa.2000).

When reviewing an order granting preliminary objections in the nature of a demurrer, an appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review. The question presented by the demurrer is whether, on the facts averred, the law

says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer.

*Id.* (citations omitted). Where a case is dismissed at the preliminary objections stage on issues of law, our scope of review is plenary. *Ellenbogen v. PNC Bank, N.A.*, 731 A.2d 175, 181 (Pa.Super.1999). A reviewing court must decide the merits of the preliminary objections "solely on the basis of the pleadings" and not on testimony or evidence outside the complaint. *Williams*, 750 A.2d at 883.

■■■■ ¶ 9 The legal principles relating to an insurer's duty to defend and indemnify are as follows:

An insurer's duty to defend is distinct from, and broader than, its duty to indemnify an insured. *Aetna Casualty and Surety Co. v. Roe*, 437 Pa.Super. 414, 650 A.2d 94, 98 (1994). An insurer is not obligated to defend all claims asserted against its insured; its duty is determined by the nature of the allegations in the underlying complaint. *Wilson v. Maryland Casualty Co.*, 377 Pa. 588, 594, 105 A.2d 304, 307 (1954); *Elitzky*, 358 Pa.Super. at 368, 517 A.2d at 985. An insurer must defend its insured if the underlying complaint alleges facts which, if true, would actually or **potentially** bring the claims within the policy coverage. *Roe*, 437 Pa.Super. at 422, 650 A.2d at 99; *Humphreys v. Niagara Fire Insurance Co.*, 404 Pa.Super. 347, 354, 590 A.2d 1267, 1271, *alloc. denied*, 528 Pa. 637, 598 A.2d 994 (1991).

An insurer who refuses to defend its insured from the outset does so at its peril, *Roe*, 437 Pa.Super. at 423, 650 A.2d at 99, *Stidham v. Millvale Sportsmen's Club*, 421 Pa.Super. 548, 564, 618 A.2d 945, 953 (1992), because the duty to defend remains with the insurer until it

is clear the claim has been narrowed to one beyond the terms of the policy. *Britamco Underwriters, Inc. v. Weiner*, 431 Pa.Super. 276, 283, 636 A.2d 649, 652, *alloc. denied*, 540 Pa. 575, 655 A.2d 508 (1994); *Stidham*, 421 Pa.Super. at 564, 618 A.2d at 953–54. An insurer who disclaims its duty to defend based on a policy exclusion bears the burden of proving the applicability of the exclusion. *American States*, 427 Pa.Super. at 183, 628 A.2d at 887.

*Board of Pub. Educ. of the Sch. Dist. v. National Union Fire Ins. Co. ["National Union"]*, 709 A.2d 910, 913 (Pa.Super.1998) (*en banc* ).

■■■■■ ¶ 10 Finally, we note the following principles relating to the interpretation of insurance contracts:

> Although we are reviewing the trial court's interpretation of the instant policy in light of the claims raised in the underlying complaint, we need not defer to the trial court's finding since the construction of a contract of insurance is a question of law. *United Services Automobile Association v. Elitzky*, 358 Pa.Super. 362, 517 A.2d 982, 985 (1986), *alloc. denied*, 515 Pa. 600, 528 A.2d 957 (1987). Our primary purpose in interpreting such contracts is to 'ascertain the intent of the parties as manifested by the language of the written agreement.' *American States Insurance Co. v. Maryland Casualty Co.*, 427 Pa.Super. 170, 628 A.2d 880, 886 (1993) (quoting *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983)). If the policy language is clear, such language is given effect by the court. *Id.* If the language is ambiguous, however, we will construe the agreement against the drafter. *Insurance Co. of Pennsylvania v. Hampton*, 441 Pa.Super. 382,

385, 657 A.2d 976, 978, *alloc. denied*, 542 Pa. 647, 666 A.2d 1056 (1995).

*Id.*

¶ 11 The primary issue in this case is whether Belser–Hale was an insured of Rockwood because the Belser–Hale employee directed Rockwood's insured, Hervatin, as Hervatin was operating the dump truck that came in contact with the power lines. Appellants contend that by directing Hervatin's actions, Belser–Hale was "using" the dump truck. In contrast, Rockwood argues that the Belser–Hale employee's connection to the truck was too attenuated to constitute a "use." This issue is one of first impression among Pennsylvania appellate courts.

¶ 12 The policy itself does not define the term "use." Our Supreme Court has recognized that the term "use" has broad but not unlimited applications:

> "The term 'use' has been defined as the general catchall of an omnibus insurance clause, designed and construed to include all proper uses of the vehicle not falling within other terms of definition such as ownership and maintenance." *State Farm Mutual Automobile Insurance Co. v. O'Brien*, 380 F.Supp. 1279 (1974). "The word 'use' in connection with the words ownership [and] maintenance . . ., must be taken in its usual meaning of use of a motor vehicle." *Assurance Company of America v. Bell*, 108 Ga.App. 766, 772, 134 S.E.2d 540 (1963).
>
> Of course if the term "use" is construed to embrace all of its possible meanings and ramifications, practically every activity of mankind would amount to a "use" of something. However the term must be considered with regard to the setting in which it is employed.

*Erie Ins. Exchange v. Transamerica Ins. Co.*, 516 Pa. 574, 533 A.2d 1363, 1367 (1987).[3]

---

**3.** In *Erie*, our Supreme Court held that an accident did not arise from the "use" of an     automobile when a 3½–year–old child entered

¶ 13 Courts of various jurisdictions have had the opportunity to address the question of whether a person who is guiding a vehicle's movement from outside the vehicle itself could be considered a user of the vehicle. In certain jurisdictions, such a guide is considered a user where the actual driver gives up a significant degree of autonomy to the guide, *e.g.*, when the driver cannot see where he is going and completely trusts the guide to direct his movements,[4] or when the guide is in a superior position.[5]

¶ 14 Other jurisdictions have squarely held that a person must physically operate the vehicle, however briefly, in order to "use" a vehicle. *Colfax v. Johnson*, 270

---

a vehicle without his parents' knowledge and set the vehicle in motion. The Court reasoned that "for one to 'use' an automobile in the sense contemplated by the pertinent provisions of the insurance policies in question, the alleged 'user' should at least know and understand the uses to which an automobile, as an automobile, may be put. A 3½–year–old child, such as Erin Gilbert in this case, does not know how to 'use' an automobile." *Id.* at 1368. Thus, *Erie* is not particularly instructive with respect to the facts of the instant case.

4. For example, where the driver cannot see where he is going and completely trusts the guide to direct his movements, the guide has been considered a "user" because the actual driver is essentially an automaton, responding solely to the guide's directions. *Liberty Mut. Ins. Co. v. American Mut. Liability Ins. Co.*, 28 N.J.Super. 17, 99 A.2d 815, 816–817 (1953) (crane operator who was unloading lumber could not see where he was going; operator relied on the site foreman to direct his movements), *County of Wyoming v. Erie L.R. Co.*, 360 F.Supp. 1212, 1219–1220 (W.D.N.Y.,1973), *affirmed,* 518 F.2d 23 (C.A.2 N.Y.1975).

On the other hand, guides have not been considered "users" where the driver does not give up a significant degree of autonomy to the guide. *See, J. Scheer & Sons Co. v. Travelers Indem. Co.*, 35 Misc.2d 262, 265, 229 N.Y.S.2d 248, 251 (1962) (general contractor performed "mere act of accommodation" by telling truck driver that he had cleared a set of sprinkler heads on the ceiling; the driver and a different guide retained active control over the vehicle); *Nicollet Properties, Inc. v. St. Paul Mercury Ins. Co.*, 271 Minn. 65, 135 N.W.2d 127, 132–133 (1965) (parking lot attendant waving a flashlight to indicate the entrance to a drive-in theater was not "user" of vehicle; attendant was not directing traffic, but instead functioned like an electric sign indicating the entrance to the theater); *Good-*

*ville Mut. Cas. Co. v. Tripp,* 46 Pa. D & C 4th 538, 546–547 (2000) (where truck driver backed out onto a road, causing accident, driver did not give up substantial autonomy to guide because: (1) driver could see the oncoming traffic and was merely assisted by the guide; and (2) guide did not hold authority over driver's movements in the form of a superior relationship such as employer-employee or principal-agent.)

5. A driver may also give up autonomy to the guide where: (1) the guide holds the superior position in the relationship, such as employer-employee, principal-agent, or general contractor-subcontractor; (2) the guide actively undertakes to direct the movement of the vehicle; and (3) the guide and the driver are engaged in a common enterprise, such as a vehicle, and thus an insured. *See, Woodrich Constr. Co. v. Indemnity Ins. Co.*, 252 Minn. 86, 89 N.W.2d 412, 418–419 (1958) (general contractor providing directions to the employee of a subcontractor who was backing up a truck on the site was considered a user of the truck; truck driver's vision was obscured); *Liberty Mut. Ins. Co. v. Steenberg Constr. Co.*, 225 F.2d 294, 295 (8th Cir.1955) (general contractor providing directions to the employee of a subcontractor who was backing up a truck on the site was considered a user of the truck); *County of Wyoming, supra* (supervisor who gave directions to asphalt-truck driver was a "user" of the truck where the supervisor gave directions to the driver, the supervisor was in charge of the project, and the driver was dependent on the supervisor to watch for oncoming trains). *But see, Wellman–Lord Engineers, Inc. v. Northwestern Mut. Ins. Co.* 222 So.2d 436, 438 (Fla.App. 1969) (holding, under circumstances similar to *Woodrich* and *Steenberg,* that a general contractor directing the movements of a truck driver on the site was not a "user" of the truck).

Kan. 7, 11 P.3d 1171, 1177 (2000); *Apcon Corp. v. Dana Trucking,* 251 Ill.App.3d 973, 191 Ill.Dec. 216, 623 N.E.2d 806, 811 (1993), *appeal denied,* 154 Ill.2d 557, 197 Ill.Dec. 483, 631 N.E.2d 705 (1994). We agree with this view for two reasons.

¶ 15 First, our Supreme Court has cautioned that the word "use" does not have unlimited meanings, and must be considered within the setting in which it is employed. *Erie Ins. Exchange,* 533 A.2d at 1367. In the instant case, the relevant context is that of a motor vehicle being driven by a competent adult from one place to another. In this context, "use" is defined as "a method or manner of employing or applying something." *Webster's Ninth New Collegiate Dictionary* (1983) at 1299. The method or manner of employing a vehicle is to physically operate it.[6] When one merely guides or directs the movement of a vehicle, the person physically operating the vehicle is still generally considered the "user."

¶ 16 Second, we share the concern of the *Colfax* and *Apcon* courts that a more expansive view would invite absurd or unintended results.[7] For example, there is no particularly persuasive reason why a guide with substantial autonomy over a vehicle should be considered a "user," while a guide with little to no autonomy should not. *See, Apcon,* 191 Ill.Dec. 216, 623 N.E.2d at 807. Both types of guides attempt to direct the movement of a vehicle, but lack actual physical control. More importantly, as a practical matter, it is unlikely that the parties intended the question of "use" to hinge on subtle, relationship-driven, multi-factor tests such as those employed by the jurisdictions cited

*supra.* Rather, the parties most likely considered "use" to turn on the straightforward and common-sense notion of physically operating the vehicle. For these reasons, we conclude that guiding or directing a vehicle that is being operated by a person is not considered a "use" thereof. Of course, if parties to an insurance policy wish to include guides as "insureds," they may certainly do so by adding terms to that effect in the policy.

■ ¶ 17 Applying these principles to the case at bar, we conclude that the trial court did not err by sustaining Rockwood's preliminary objections. As noted above, "an insurer must defend its insured if the underlying complaint alleges facts which, if true, would actually or potentially bring the claims within the policy coverage." *National Union,* 709 A.2d at 913. In the underlying case, the plaintiff alleged that a Belser–Hale employee guided or directed Hervatin, who was driving the truck at the time. According to the complaint, Belser–Hale was not physically operating the truck at the time. Thus, for the reasons set forth above, the complaint unambiguously establishes that Belser–Hale is not a "user" of the truck. Thus, Belser–Hale is not an insured under the Rockwood policy. Accordingly, Rockwood has no duty to defend or indemnify Belser–Hale. Appellants' first claim fails.

■ ¶ 18 Next, Appellants argue that Belser–Hale was an insured under the Rockwood policy because Belser–Hale is "liable for the conduct" of a named insured (namely, Hervatin). Appellants cite no authority for this proposition, and we have found none. As Rockwood correctly notes,

---

6. We do note that the policy contemplates the possibility that moving property to or from a covered auto may be considered a "use". Rockwood Policy, Section II(A)(1)(b)(4). In the instant case, that possible "use" of an auto is not at issue.

7. We cannot help but notice that if this Court were to accept Appellants' interpretation of the policy, Hervatin's insurer (Rockwood) would be required to defend and/or indemnify Belser–Hale, the very people who allegedly injured Hervatin, its own insured.

this provision of the policy arguably would apply if Belser–Hale were responsible for Hervatin's conduct and such conduct caused harm to a third party (*e.g.*, if Belser–Hale were vicariously liable for Hervatin's actions). The complaint in the instant case does not allege that Hervatin committed negligence for which Belser–Hale is responsible. Instead, the complaint alleges that Hervatin was the **victim**, and that Belser–Hale is liable to Hervatin and his estate for Belser–Hale's own negligence. Any other construction of the policy language at issue would lead to illogical and untenable results. Accordingly, we conclude that the trial court did not commit an error of law by sustaining Rockwood's preliminary objections in this respect.

¶ 19 Finally, Appellants argue that Rockwood's coverage is primary over any coverage to be provided by Bituminous. Rockwood responds that this issue is premature and should not be addressed on appeal because the issue was not raised in Rockwood's preliminary objections. We choose not to address the issue, because it is moot. Belser–Hale is not an insured; therefore, Rockwood need not provide **any** coverage to Belser–Hale, primary or otherwise. For the reasons set forth above, we conclude that the trial court did not err in dismissing Appellants' declaratory judgment action.

¶ 20 Order affirmed.